IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| | | |
|---|---|---|
| TAMARA R. PEARLMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:08-CV-393-A |
| | § | |
| CITY OF FORT WORTH, TEXAS, ET AL., | § | |
| | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
and
ORDER

Before the court for decision are the motions for summary judgment filed by defendant City of Fort Worth, Texas ("City"), and defendant P. R. McCleskey ("McCleskey"), respectively. After having studied the motions, plaintiff's response thereto, McCleskey's reply, the entire summary judgment record, and pertinent legal authorities, the court has concluded that both motions should be granted.[1]

I.

Nature of Plaintiff's Claims

Plaintiff's claims are based on events that occurred on August 7, 2006, at plaintiff's place of residence in Fort Worth,

---

[1] Objections and motions to strike summary judgment evidence have been filed. Rather than to rule on those motions, the court is giving the summary judgment evidence only such weight as is legally appropriate.

Texas, when McCleskey, a police officer for City, went to plaintiff's residence on official police business. The City police department had received a telephone call from a concerned father in the State of Michigan that his eighteen-year-old daughter, who was at plaintiff's residence, was being mistreated. The daughter, Allison, was staying with plaintiff, who was the sister of Allison's mother, while the father and Allison's mother were in the process of obtaining a divorce.

When McCleskey arrived at the residence to check on Allison in response to her father's expression of concern, plaintiff resisted McCleskey's attempt to interview Allison outside the hearing of plaintiff. Plaintiff's resistance led to McCleskey putting her under arrest. While McCleskey was trying to handcuff plaintiff and take her into custody, plaintiff offered physical resistance that caused McCleskey to take actions against plaintiff that plaintiff contends constituted excessive force against her in violation of the Fourth Amendment of the Constitution of the United States. In addition, plaintiff claims that McCleskey's arrest of plaintiff itself constituted an unlawful seizure in violation of the Fourth Amendment.

2

Plaintiff seeks to hold City liable for McCleskey's conduct based on the theory that City sanctioned McCleskey's conduct, thus causing his conduct to constitute a customary practice and/or policy or procedure of City. Plaintiff also contends that City has liability because of having failed to adequately train its officers.

The constitutional claims asserted by plaintiff are brought under 42 U.S.C. § 1983. In addition to the constitutional claims, plaintiff alleged in her complaint false arrest, false imprisonment, intentional infliction of emotional distress, and assault and battery claims under Texas law.[2]

II.

The Motions for Summary Judgment

A.  City's Motion

The grounds of City's motion are that:

    1.  the summary judgment evidence establishes as a matter of law that McCleskey had probable cause to arrest plaintiff for interfering with the public duties of a police officer;

---

[2]By memorandum opinion and order the court signed October 30, 2008, the court dismissed all official-capacity claims against McCleskey and all state-law claims asserted by plaintiff against McCleskey.

3

<s>2.</s>     there is no summary judgment evidence that personnel of City failed to provide medical care to plaintiff;[3]

3.     as a matter of law plaintiff cannot succeed on her § 1983 claims against City because she cannot demonstrate that City had a policy or custom that caused a deprivation of her federal constitutional rights;

4.     there is no summary judgment evidence that the training policy of the City was not adequate; and

5.     plaintiff's state-law claims against City cannot succeed for the added reason that the doctrine of sovereign immunity causes it not to have potential state law liability for McCleskey's conduct.

B.     McCleskey's Motion

The grounds of McCleskey's motion are that:

1.     plaintiff cannot overcome McCleskey's qualified immunity defense;

---

[3]The court questions whether plaintiff's claims for relief include a separate claim based on failure to provide medical care. However, the parties in their motions for summary judgment and related documents proceed on the assumption that such a claim has been made by plaintiff. Therefore, the court is assuming for the purpose of this memorandum opinion and order that such a claim exists.

4

      2.    the summary judgment record shows as a matter of law that McCleskey had probable cause to arrest plaintiff;

      3.    the principle of <u>Heck v. Humphrey</u> prevents plaintiff from contending that her arrest was unlawful; and

      4.    the summary judgment evidence shows that McCleskey did not use excessive force against plaintiff.

## III.

## Analysis

A.  <u>Applicable Summary Judgment Principles</u>

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. <u>Anderson</u>, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the

5

nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of the pleadings, but must set forth specific facts showing a genuine issue for trial. Anderson, 477 U.S. at 248, 256. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law. Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597. See also Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc) (explaining the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict).

B.  City's Motion is Meritorious

For the reasons discussed under the next subheading of this memorandum opinion and order, the court has concluded that the summary judgment record establishes as a matter of law that McCleskey had probable cause to arrest plaintiff. Thus, the court concludes that the first ground of City's motion has merit.

However, the more basic reason why City's motion should be granted it that plaintiff has failed to adduce any summary judgment evidence that City had a policy or custom that caused a deprivation of plaintiff's federal constitutional rights. City has affirmatively shown that a police officer following the City's policies and customs in activities such as those in which McCleskey was engaged would not violate a person's federal constitutional rights. There is no suggestion in the summary judgment evidence that any training policy of City was inadequate, or that there was any policy or custom of City that

7

would have encouraged or found acceptable conduct of the kind plaintiff alleges in her complaint against McCleskey.  Nor is there any summary judgment evidence that personnel of City failed to provide needed medical care to plaintiff.

The sovereign immunity doctrine insulates City from plaintiff's state-law claims against it.  Under the doctrine of sovereign immunity, a city cannot be held liable for the actions of its employees unless there is a constitutional or statutory provision waiving the city's sovereign immunity.  See Univ. of Tex. Med. Branch v. York, 871 S.W.2d 175, 177 (Tex. 1994).  City's sovereign immunity cannot be waived except through the use of clear and unambiguous language.  Id.; Duhart v. State, 610 S.W.2d 740, 742 (Tex. 1991).  All of the state-law claims asserted by plaintiff against City are intentional torts (false arrest, false imprisonment, intentional infliction of emotional distress, and assault and battery).  The Texas Tort Claims Act does not contain a waiver of immunity for intentional torts.  See Taylor v. Gregg, 36 F.3d 453, 457 (5th Cir. 1994); City of Hempstead v. Kmiec, 902 S.W.2d 118, 122 (Tex. App.--Houston [1st Dist.] 1995, no writ).  The Texas Tort Claims Act expressly exempts from its coverage any claim "arising out of assault, battery, false imprisonment, or any other intentional tort."

Tex. Civ. Prac. & Rem. Code Ann. § 101.057. The Fifth Circuit has said that "[t]his provision shields municipalities from suits arising out of intentional torts committed by governmental employees and should be liberally construed to accomplish this objective." Gillum v. City of Kerrville, 3 F.3d 117, 123 (5th Cir. 1993) (citation omitted).

For the reasons given above, City is entitled to summary judgment as to all claims asserted by plaintiff against it.

C.  McCleskey is Entitled to Summary Judgment as to the Remaining Claims Against Him

The only claims remaining against McCleskey are the § 1983 claims that he violated plaintiff's Fourth Amendment rights against unlawful seizure and excessive force.

The court agrees with McCleskey that plaintiff's claim that her arrest itself was in violation of her Fourth Amendment right to be free from seizure is foreclosed by the principle announced Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). The summary judgment record shows that as a result of her conduct on the occasion in question plaintiff was charged with intentionally preventing or obstructing McCleskey, a person she knew to be a police officer, from effecting an arrest of plaintiff by using force against the police officer, to wit, by wrestling the police

9

officer. McCleskey's App. at 85-86. In addition, she was charged based on her August 7, 2006, conduct with criminal negligence for interrupting, disrupting, impeding, or interfering with McCleskey, a police officer, who was performing a lawful duty, to wit, investigating an unlawful restraint, by grabbing Allison while McCleskey was attempting to interview Allison, knowing that McCleskey was a police officer. Id. at 94-95. As to the negligence interruption, disruption, et cetera, offense, plaintiff pleaded guilty to the lesser misdemeanor offense of disorderly conduct. Id. at 87-88. Based on that plea of guilty, she was given deferred adjudication, placed on community supervision for a period of one day. Id. at 88. More importantly, plaintiff, by way of a plea in bar, admitted that she was guilty of the offense of resisting arrest, and she requested the sentencing court to take her guilt of that offense into account in determining the sentence to be imposed in connection with the offense to which she pleaded guilty.[4] Id. at

---

[4] In the Joint Pre-Trial Order the parties stipulated to the following facts:

> Following her arrest, Ms. Pearlman was charged with resisting arrest and interference with public duties. As part of her plea bargain in the interference case, on July 10, 2008, Ms. Pearlman signed plea documents wherein her guilt was admitted as to the resisting arrest charge. The resisting arrest charge was barred pursuant to the terms of the plea in bar signed by Plaintiff.

(continued...)

10

63.   Therefore, under a logical extension of the Heck principle, plaintiff should not now be permitted to contend that McCleskey did not have probable cause to arrest her.  A judgment in favor of plaintiff based on the theory that her arrest was unlawful would necessarily imply that her admission of guilt to the offense of resisting arrest was not factually based.

Moreover, the court has concluded that when all the summary judgment evidence is weighed and considered, no rational trier of fact would find for plaintiff on her claim that McCleskey used excessive force against her.  The basic facts are not in dispute.  Indeed, in the Joint Pre-Trial Order signed by the parties and tendered to the court, the parties stipulated to the following facts:

> On August 7, 2006, [McCleskey] was working as a member of the FWPD's North Patrol Division.  Following that morning's roll call meeting, the division's sergeant, H.G. Baxter, called Officer McCleskey aside and gave him a specific assignment.
>
> Sgt. Baxter explained to Officer McCleskey that he had received a call from a man concerned about the well being of his daughter.  The father, Daniel O'Donnell, lived in Michigan.  He reported that his 18-year-old daughter, Allison O'Donnell (who, it turns out, reportedly has some degree of cognitive impairment due to a head injury she received as a child), had been

---

[4](...continued)
J. Pre-Trial Order at 16.

brought to Texas by her mother. Mr. and Mrs. O'Donnell were in the process of divorcing. While in Texas, Allison and her mother were staying with Plaintiff Tamara Pearlman, who is Mrs. O'Donnell's sister and Allison's aunt. Mrs. O'Donnell had returned to Michigan for some period of time, leaving Allison to live with Plaintiff Pearlman.

Daniel O'Donnell told Sgt. Baxter that he feared Allison was being held against her will by Pearlman. Sgt. Baxter relayed this information to Ofcr. McCleskey and hold [sic] him to visit the Pearlman home to perform what officers often refer to as a "welfare check" on Allison. He gave McCleskey specific instructions to interview Allison outside of the presence of Pearlman and to try to determine if she was there of her own free will.

. . . .

. . . Officer McCleskey then proceeded to Pearlman's house again, arriving at approximately 12:51 p.m. This time, Pearlman answered the door.

McCleskey asked to speak to Allison who had approached and stood behind Pearlman. Pearlman did not initially prevent same from happening. Officer McCleskey asked Allison if she was 18 years old, and she said she was. Office [sic] McCleskey asked Allison if she would step out and speak with him, and she voluntarily complied. Officer McCleskey began walking down the driveway with Allison.

Before Officer McCleskey could even begin interviewing Allison, Plaintiff Pearlman formed the belief that McCleskey was going to kidnap Allison. Pearlman later claimed to have been concerned for Allison's safety after seeing McCleskey lead Allison near the street and towards his vehicle. Pearlman began telling Allison to return to her.

Many of the subsequent events are disputed, but Pearlman and McCleskey eventually got into an

12

>       altercation, and McCleskey decided to arrest Pearlman.
>       At some point during the incident McCleskey informed
>       Plaintiff Pearlman that she was under arrest. Pearlman
>       admittedly being arrest [sic]. Pearlman was eventually
>       handcuffed, photographed at the scene, and transported
>       to jail. Defendants dispute many of Pearlman's claimed
>       injuries, but the parties agree she received a scraped
>       cheek and a sore, perhaps sprained, elbow.

J. Pre-Trial Order at 14-16.

Once the deposition testimony of the parties, as contained in the summary judgment record, is considered in the context of those stipulated facts, the only reasonable finding that could be made by a fact finder based on the summary judgment evidence is that inappropriate conduct on the part of plaintiff, rather than conduct on the part of McCleskey, led to the events of which plaintiff complains.

Moreover, there is no summary judgment evidence that would support a finding that McCleskey did not act in an objectively reasonable manner, consistent with customary professional police practices, in response to plaintiff's conduct. Thus, plaintiff has failed to overcome McCleskey's qualified immunity defense.[5] Furthermore, there is no summary judgment evidence that McCleskey

---

[5] Plaintiff had the burden to prove inapplicability of the qualified immunity defense. See McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). In order to meet her burden, plaintiff must adduce "sufficient evidence to raise a genuine issue of material fact suggesting (1) that [McCleskey]'s conduct violated an actual constitutional right; and (2) that [McCleskey]'s conduct was objectively unreasonable in light of law that was clearly established at the time of his actions." Id.

acted inappropriately in response to any need plaintiff might have had for medical care.

## IV.

### Order

For the reasons given above,

The court ORDERS that the motions for summary judgment of City and McCleskey be, and are hereby, granted.

The court further ORDERS that all claims and causes of action asserted by plaintiff against City and McCleskey be, and are hereby, dismissed.

SIGNED September 3, 2009.

_____
JOHN McBRYDE
United States District Judge